IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
BOBBY WALLACE,                    )
                                  )
                  Plaintiff,      )    CIVIL ACTION
                                  )
v.                                )    No.  14-1211-MLB
                                  )
CAROLYN W. COLVIN,                )
Acting Commissioner of            )
Social Security,                  )
                                  )
                  Defendant.      )
                                  )
```

**MEMORANDUM AND ORDER**

This is an action reviewing a final decision of the Commissioner of Social Security denying plaintiff disability insurance benefits.

**I. General Legal Standards**

The court's standard of review is contained in 42 U.S.C. § 405(g), which provides in part that "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive,..." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F.Supp. 1045, 1047 (D.Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that he has a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that his is not only unable to perform his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.[1] 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find

---

[1] This standard applies regardless of whether such work exists in the immediate area where the individual lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 423(d)(2)(A).

-2-

non-disability unless the claimant can show that he is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his previous work; unless the claimant shows that he cannot perform his previous work, he is determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487. Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to

evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f, g).

**II. History of the Case**

Following a hearing, Administrative Law Judge (ALJ) Ross Stubblefield issued a written decision denying plaintiff's application for disability benefits on January 25, 2013. Doc. 7-3 at 14-27. At step one, the ALJ determined that plaintiff has not engaged in substantial gainful activity since September 5, 2009, his alleged onset date. At step two, the ALJ found claimant has the following severe impairments: degenerative disc disease of the lumbar spine and anxiety disorder. At step three, the ALJ found that plaintiff's impairments do not meet or equal a listed impairment.

The ALJ found that plaintiff has the residual functional capacity (RFC) to perform light work, as defined in 20 CFR 404.1567(b), with limitations including the following: lifting and/or carrying 20 pounds occasionally, 10 pounds frequently; standing and/or walking for 6 hours in an 8-hour workday; and sitting for up to 6 hours in an 8-hour workday with normal breaks. These findings conflicted to some extent with plaintiff's testimony and with the opinion of his primary care treating physician, Dr. Stephen Thies. The ALJ relied instead on medical opinions of another treating physician and on consulting physicians.

Plaintiff asserted that he has problems sitting for over an hour due to back pain and that he can stand for only 30 minutes and walk 15 minutes before needing to sit down. He testified he needs to lie in a reclined position for 2-3 hours per day to get relief. The ALJ found that plaintiff's subjective pain complaints and allegations of

disability were inconsistent with the medical record. Plaintiff's treating physician, Dr. Thies, indicated in a medical source statement dated April 2, 2012 that plaintiff had limitations including: lifting or carrying 15 pounds occasionally, 5 pounds frequently; standing or walking 3 hours of an 8-hour day; sitting up to 2 hours in an 8-hour day; and having to lie down 2-3 times a day for 30 minutes to 2 hours. The ALJ afforded "little weight" to these opinions, however, concluding that the objective evidence did not support them.

At step four, the ALJ found plaintiff cannot perform any past relevant work. At step five, considering plaintiff's age, education, work experience, and RFC, the ALJ found plaintiff could perform jobs that exist in significant numbers in the national economy, including electrical assembler, mail clerk, and routing clerk. The ALJ therefore concluded that plaintiff is not disabled.

**III. Analysis**

Plaintiff alleges that the ALJ erred by failing to properly analyze and consider the opinion of treating physician Dr. Thies and by improperly disregarding plaintiff's statements concerning the intensity and persistence of his pain.

A. <u>Treating physician opinion</u>. A treating physician's opinion must be given controlling weight if it "is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." <u>Knight ex rel. P.K. v. Colvin</u>, 756 F.3d 1171, 1176 (10th Cir. 2014). When the opinion is not given controlling weight, the ALJ must explain what weight, if any, was assigned to it using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. <u>Knight ex rel.</u>, 756 F.3d at

1176-77. These factors require that medical opinions be assessed based on: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

   The ALJ afforded little weight to Dr. Thies's opinions in two medical source statements (MSSs). Doc. 7-3 at 22. In the first MSS, dated June 9, 2011, Thies opined that plaintiff was limited to lifting or carrying 20 pounds occasionally and 10 pounds frequently; standing or walking two hours of an eight-hour workday; sitting three to four hours of an eight-hour workday; needing to change position every 15 to 20 minutes; and occasional climbing, stooping and kneeling, with no crouching or crawling. In the second MSS, dated April 2, 2012, Thies opined that plaintiff could lift 15 pounds occasionally and five pounds frequently; stand or walk three hours of an eight-hour workday; sit no more than two hours of an eight-hour workday; and that he had to lie down 30 minutes to two hours every two to three hours.

   A review of the record supports the ALJ's conclusion that the limitations expressed by Dr. Thies are both lacking in objective clinical support and are inconsistent with substantial other evidence. As to the first point, it is clear that both x-ray and MRI examinations confirmed that plaintiff suffers from degenerative disk

disease and degenerative joint disease of the lumbar spine. Dr. Katta, plaintiff's orthopaedic specialist, confirmed as much as of January 2011. But as the ALJ pointed out, Dr. Katta's findings from those tests also indicated plaintiff was "without any clinical evidence of ongoing lumbar radiculopathy" and "without any significant spinal canal or neural foraminal compromise" as of June 2011. The tests showed no significant disk destruction, nerve root compression, or spinal stenosis which, as the ALJ noted, is often associated with disabling pain and limitations.

Dr. Thies's MSS of April 2012 contained various limitations, some of which were more restrictive and some of which were less restrictive than the 2011 MSS. The 2011 MSS also contained one or more limitations that the 2012 one did not, such as a need for plaintiff to frequently shift positions. The 2012 MSS had no explanation of the basis for plaintiff's limitations, while the 2011 MSS only cryptically stated the findings were based on "lumbar DJD on MRI" and "lumbar DJD & DDD on MRI." Dr. Thies's treatment notes and records do not otherwise explain or show how the extent of the limitations was determined. Neither do they or other materials in the record explain the basis for the more limited restrictions in 2012, or the inconsistencies between the 2011 and 2012 MSSs. In fact, Dr. Thies's basis for the extent of plaintiff's limitations is unexplained in the record. It may have been derived from plaintiff's own pain assessment, although again, that is unclear given the lack of any explanation for the doctor's findings.

At the same time, the severely restrictive limitations in the MSSs appear contrary to numerous observations in the treatment notes of both Drs. Thies and Katta. For example, Dr. Katta's notes dated

June 24, 2011, after plaintiff's MRI, showed that plaintiff had localized tenderness and painful, limited movement of his lumbar spine, but he was without muscle spasm, he walked without any gait deviation, he had full muscle strength and reflexes in the lower extremities, he was using proper body mechanics, and he was independent with mobility. Katta advised plaintiff to continue his current medication and home exercise and to gradually increase activities as tolerated. Katta suggested injections for the pain but plaintiff "felt like he is not in that much pain to think about any injections at this time." Dr. Thies's notes from August 2011 indicated that plaintiff's daily pain level was "3-4 with low activity," although the pain was worse when lying down. In March 2012, shortly before the 2012 MSS, Thies again noted that plaintiff's pain was "3-4 on average." It could flare up to 7-8 "only a few times a week" and plaintiff had "good steps to take if [it] flares" up, although on average plaintiff had to sit down or lay down several times a day. He noted that plaintiff had a back brace but "only uses it when doing more activity." Thies's examination showed "mild tenderness over paraspinal muscle of low back, ... mild stiffness and pain with flexion, negative crush test, gait and transfers are normal."

In addition to the lack of clinical support for the MSSs, the limitations indicated by Dr. Thies were inconsistent with substantial other evidence in the record. Dr. Thies found in the 2012 MSS that plaintiff was limited to lifting 15 pounds, although both plaintiff and Dr. Katta indicated plaintiff could lift 25 pounds. As noted above, the treatment notes and examinations of plaintiff's treating doctors (both Thies and Katta) are inconsistent with the severe and

disabling pain indicated by Thies in his MSSs. Those limitations are also inconsistent with the findings of consulting physician Dr. Murari Bijpuria, whose opinion the ALJ gave great weight, insofar as Bijpuria found plaintiff could, with normal breaks, stand, walk and sit for six hours of an eight hour workday. Both the ALJ and Bijpuria, it should be noted, discounted other medical assessments that did not give sufficient credit to plaintiff's subjective complaints of persistent pain. There were other inconsistencies as well (including those mentioned below regarding evidence of plaintiff's daily activities) which supported the ALJ's conclusion that Dr. Thies's MSS opinions should not be given controlling weight.

Consistent with the requirements of 20 C.F.R. §§ 404.1527 and 416.927, the ALJ explained the weight he gave to Thies's opinions and assessed those opinions in accordance with the factors spelled out in the regulations. The ALJ's treatment of Thies's opinions comported with the regulations and was supported by substantial evidence. The record shows no error in the ALJ's consideration of this evidence or in his application of the governing standards.

B. <u>Credibility of plaintiff's complaints of pain</u>. Plaintiff also contends the ALJ erred by failing to conduct a proper analysis of his pain complaints "in that the credibility analysis is not supported by the substantial evidence of record." Doc. 9 at 18.

A claimant's subjective complaints of debilitating pain are evaluated for credibility under a three-step analysis that addresses: (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective

allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling. Wilson v. Astrue, 602 F.3d 1136, 1144 (10th Cir. 2010) (citations omitted). The first two elements are clearly satisfied here. The only question is whether plaintiff's pain was in fact disabling.

In determining whether the claimant's subjective complaints of pain are credible, the ALJ should consider various factors, including: the levels of medication and its effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence. Wilson, 602 F.3d at 1145 (citing Branum v. Barnhart, 385 F.3d 1268, 1273 (10th Cir. 2004)). See also 20 C.F.R. § 404.1529 and Soc. Sec. Ruling 96-7p (listing similar factors to consider: 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain; and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other

-10-

symptoms.).

The ALJ's opinion shows that he properly considered these factors in assessing the credibility of plaintiff's pain allegations. After noting the lack of objective diagnostic support for debilitating pain, the ALJ again considered the treatment notes and results of exams. Dr. Katta's notes, for example, showed that plaintiff was walking without any gait deviation. Although he continued to have pain in his lumbar spine, it was without muscle spasm, he had normal strength in his lower extremities, he was using proper body mechanics, he was independent in his mobility, and he had no symptoms of nerve damage. Katta suggested injections for pain but plaintiff "felt like he is not in that much pain to think about any injections at this time." Dr. Thies's notes likewise indicated numerous visits when plaintiff's reported pain symptoms were apparently not disabling. See e.g., Tr. at 372 (12/29/2010 - plaintiff is about to be employed and would like his back evaluated prior to employment); Tr. at 365 (3/2/2011 - plaintiff seen for disability form to be completed; "If avoids physical activity symptoms are pretty good."); Tr. at 354 (8/29/2011 - daily pain level 3-4 with low activity); Tr. at 351 (10/5/2011 - "Needed pain medication a few times"); Tr. at 349 (3/12/2012 - has back brace, only uses when doing more activity. Pain worse with bending, prolonged standing. 3-4 on average, can have flares up to 7-8/10 only a few times a week, has good steps to take if [it] flares.). These and other items provided support for the ALJ's conclusion that the evidence as a whole showed a level of pain that would not preclude plaintiff from all types of work.

The ALJ also considered plaintiff's course of treatment. He

appropriately characterized it as conservative in nature, noting that it consisted primarily of a program of home exercise and stretching combined with pain medication which, until October of 2011, was non-narcotic in nature. Although plaintiff reported some drowsiness as a side effect of medication, nothing in the record suggested that it was such that it would have prevented plaintiff from being able to perform light work. Plaintiff's treating doctors suggested injections for pain on more than one occasion but plaintiff declined, indicating the pain was not that severe, and the record indicates that he never received such injections. Cf. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir .2012) (when evaluating credibility, the ALJ should consider, among other items, the claimant's regular contact with a physician and her willingness to try any prescribed treatment). He was also prescribed a back brace but rarely used it, reporting that he used it only in periods of high activity. As the ALJ pointed out, no physician ever recommended surgery for plaintiff's condition.

The ALJ also considered plaintiff's daily activities and permissibly concluded that they showed a level of activity consistent with a range of light work. He noted plaintiff's daily activities included making simple meals, doing cardiovascular exercises for 20-30 minutes, performing household chores such as laundry and vacuuming, driving to visit his parents, and watching television. Plaintiff was also the primary care giver for his niece and nephew, who were (at the time) ages 12 and 13.  He visited his father a couple of times a week, ran errands, and occasionally went grocery shopping with his wife. He mowed his lawn on a riding lawn mower for about an hour at a time, was able to periodically work on cars, and could lift 25 pounds.

The ALJ considered other evidence bearing on plaintiff's motivation. He noted that plaintiff had a good work history for 32 years as a machinist but was laid off in 2009 when his former employer reduced its operations. Plaintiff thereafter hurt his back and allegedly became disabled in September of 2009, but he received unemployment compensation until late 2010. In order to obtain that compensation, plaintiff had to certify that he was able and willing to work, which is inconsistent with his claim of disability during that period. The ALJ noted that plaintiff filed for disability benefits in January 2011, shortly after his unemployment benefits ended.

There is no question that plaintiff suffers from pain, but as the ALJ noted, the issue here is whether the pain was of such a nature so as to preclude all substantial gainful activity. The ALJ appropriately considered all of the evidence in concluding that plaintiff's allegation of disabling pain was not fully credible, and that he retained the capacity to perform certain light work jobs, including those identified in the ALJ's opinion. (The ALJ also appropriately considered the extent and effect of plaintiff's anxiety disorder on his ability to work.) "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." Wilson, 602 F.3d at 1144. The ALJ's credibility determination was supported by substantial evidence, and under the governing standard it must be affirmed.

**IV. Conclusion**

The decision of the Commissioner is affirmed.

-13-

IT IS SO ORDERED.

Dated this 26th day of June 2015, at Wichita, Kansas.

                                                    s/Monti Belot
                                                    Monti L. Belot
                                                    UNITED STATES DISTRICT JUDGE

-14-